**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| JAMES D. and D.D., | |
| Plaintiffs, | No. 1:25-CV-03681 |
| v. | Judge Edmond E. Chang |
| HEALTH CARE SERVICE CORPORATION, doing business as BLUE CROSS BLUE SHIELD OF TEXAS, and TRANSCANADA USA, INC. EMPLOYEE MEDICAL PLAN, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

James D.'s daughter D.D. received mental-health treatment from two facilities in Utah. R. 16, First Am. Compl. ¶¶ 1, 4.[1] After James D.'s claims for insurance coverage were denied, he and his daughter brought this suit against Health Care Service Corporation (which does business as Blue Cross Blue Shield of Texas), the entity that administered the relevant benefits plan, as well as against the plan itself. *Id.* ¶¶ 2–3, 5; R. 32, Defs.' Br. at 1. The Plaintiffs allege violations of the Employment Retirement Income Security Act of 1974 (commonly known as ERISA), 29 U.S.C. § 1132(a), and the Mental Health Parity and Addiction Equity Act of 2008, *id.* § 1185a(a)(3).[2] First Am. Compl. ¶¶ 8, 66–110. The Defendants now move to dismiss the First

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]This Court has subject matter jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

Amended Complaint for failure to state a claim. R. 31, Defs.' Mot; Defs.' Br. at 1. For the reasons explained in this Opinion, the First Amended Complaint is dismissed, though for now without prejudice and with leave to amend again.

## I. Background

James D. and D.D. are a father-daughter duo who live in Texas and are covered by a health-insurance plan administered by Blue Cross. First Am. Compl. ¶¶ 1–2, 5. Seeking mental-health treatment, D.D. was admitted to two facilities in Utah (Wingate Wilderness Therapy and Uinta Academy, RTC, LLC) for about seven months in 2022. *Id.* ¶ 4. James D. submitted claims to Blue Cross for both periods of inpatient treatment. *Id.* ¶¶ 21, 51–52.

Blue Cross ultimately denied James D.'s claims. First Am. Compl. ¶ 5. For D.D.'s treatment at Wingate, Blue Cross denied James D.'s claim because Wingate provided services that are excluded under the plan, namely wilderness programs. *Id.* ¶¶ 24, 47. As for Uinta, Blue Cross explained that a facility would be considered a residential treatment center only if there was 24-hour nursing, a service that was unavailable at Uinta. *Id.* ¶ 51.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task ...." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### III. Analysis

Consistent with the treatment of factual allegations at the pleading stage, the Defendants do not contest the alleged facts for purposes of the motion to dismiss. Defs.' Br. at 2 n.2. And the parties agree that ERISA governs the plan. *Compare* First Am. Compl. ¶ 3, *with* Defs.' Br. at 5–9. But the parties disagree on whether the wilderness program at Wingate and the treatment program at Uinta are covered, as a matter of law, by James D.'s plan. Defs.' Br. at 5–9; R. 37, Pls.' Resp. at 7–9. And if the programs are not covered, the Plaintiffs argue that the exclusion of either violates the Parity Act. Pls.' Resp. at 9–13. The Court will take each argument in turn.

To do so, the Court considers James D.'s health-insurance plan, as described in a 2022 benefits booklet. The Defendants attach a copy of the booklet to their motion to dismiss, R. 32-1, Exh. 1, Benefits Booklet, and because the terms of the plan are central to the Plaintiffs' claims, the Court considers them at the pleading stage, *Esco v. City of Chicago*, 107 F.4th 673, 678–79 (7th Cir. 2024).

### A. ERISA

In evaluating plans governed by ERISA, the Court applies "[o]rdinary principles of contract interpretation." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 102 (2013). Ambiguous terms are construed against the plan drafters and in favor of the plan participants. *Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 665–66 (7th Cir. 2005).

The Plaintiffs assert that they are entitled to benefits arising from D.D.'s treatment at Wingate and Uinta. To begin, the Plaintiffs contend that Wingate does not

provide "wilderness programs" (which they concede is excluded by the plan) and instead offers "outdoor behavioral health services." Pls.' Resp. at 7–8. This argument assumes that the two terms are mutually exclusive, but the plan states that wilderness programs are one example of behavioral health services. Benefits Booklet at 48. And in any event, without some explanatory factual allegations, it defies reason to suggest that a program named "Wingate Wilderness Therapy" offers a behavioral health service that is not a "wilderness program." *See Stephanie R. v. Blue Cross & Blue Shield of Ill.*, — F. Supp. 3d —, 2025 WL 3648709, at *3 (N.D. Ill. Dec. 16, 2025) (reaching same conclusion, though under more deferential standard of review). Meanwhile, the Plaintiffs do not claim that Uinta provides 24-hour onsite nursing, so the plan plainly excludes it from coverage as a residential treatment center. Benefits Booklet at 62–63.[4]

As an alternative, the Plaintiffs argue that Wingate counts as a "Provider" or "Other Provider" of mental-health services. Pls.' Resp. at 8–9. Although it is unclear, the Plaintiffs appear to make the same argument about Uinta. *See* First Am. Compl. ¶¶ 54, 56. But the plan provides a closed, enumerated list of facilities and

---

[4]The Plaintiffs suggest that it is improper to adjudicate the applicability of an exclusion at the pleading stage because exclusions are the Defendants' burden to prove and thus are affirmative defenses. Pls.' Resp. at 8. Even if an exclusion to insurance coverage is somehow an "affirmative" defense, the Court is "not bound to accept [the Plaintiffs'] allegations as to the effect of the [plan]," may consider the plan itself as part of the pleadings, and can resolve the case on the basis of the affirmative defense where "more evidence could not have made a difference." *McCready v. eBay, Inc.*, 453 F.3d 882, 891–92 & n.2 (7th Cir. 2006) (cleaned up). In any event, exclusions in an insurance plan lack hallmark features of an affirmative defense, *see Bradley v. Village of Univ. Park*, 59 F.4th 887, 895 n.1 (7th Cir. 2023), so the Court need not convert the Defendants' Rule 12(b)(6) motion into a motion for judgment on the pleadings, *see Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).

professionals that count as providers or other providers, Benefits Booklet at 60, 62, and the Plaintiffs do not identify which they believe applies to Wingate or Uinta. "Residential Treatment Center for Children and Adolescents" appears most applicable, but those centers are defined alongside general "Residential Treatment Center[s]" and thus are subject to the same exclusions and conditions. *Id.* 62–63. And the Plaintiffs do not claim that either facility meets the 24-hour-nursing requirement for residential treatment centers.[5]

The Plaintiffs resist these conclusions by insisting that their factual allegations are sufficient. *See* Pls.' Resp. at 3–4, 8–9. But the Plaintiffs' assertions on these particular plan-interpretation points are not *facts*; they are legally conclusory statements about the plan's terms and benefits. So the Court cannot accept those claims as true when resolving this motion to dismiss. *Iqbal*, 556 U.S. at 678.

## B. Parity Act

Even if benefits may not be due directly under the plan, the Plaintiffs contend that they still may recover benefits if the basis for denial violates the Parity Act. Pls.' Resp. at 9–13. The Parity Act broadly prohibits "financial requirements" and

---

[5]In their First Amended Complaint, the Plaintiffs suggest that benefits may be due for treatment at Wingate because the facility qualifies as a "Substance Use Disorder Treatment Center," for which there is no wilderness exclusion. First Am. Compl. ¶¶ 42, 44. The Defendants contend that this construction of the plan would read the wilderness exclusion out of application. Defs.' Br. at 6. Indeed, the plan requires residential treatment centers (for which wilderness programs are excluded) to provide "treatment of Substance Use Disorder," Benefits Booklet at 62–63, so the Plaintiffs' interpretation of the plan may well be incorrect. In any event, in their response brief, the Plaintiffs failed to make any argument on this issue of interpretation, *see generally* Pls.' Resp., so the Court does not resolve the potential issue. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument … results in waiver.").

"treatment limitations" that apply to "mental health or substance use disorder benefits" and are "more restrictive than the predominant [financial requirement or] treatment limitations applied to substantially all medical and surgical benefits covered by the plan." 29 U.S.C. § 1185a(a)(3)(A). These restrictions can be "quantitative" or "nonquantitative" in nature, 29 C.F.R. § 2590.712(a), and some examples of the latter include "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits," *id.* § 2590.712(c)(4)(ii)(H). The Plaintiffs' challenges to the plan's compliance with the Parity Act concern these kinds of nonquantitative treatment limitations.

The Court discerns in the Plaintiffs' response brief two theories that supposedly support Parity Act violations: (1) the 24-hour-nursing requirement, which applies to residential treatment centers (a mental-health benefit), does not apply to all medical and surgical benefits, First Am. Compl. ¶¶ 58–60, 90–96; Pls.' Resp. at 9–10; and (2) the plan may not incorporate state and federal law as to medical and surgical benefits if it instead writes into the plan the same requirement for mental-health benefits, Pls.' Resp. at 9. There appear to be two more theories hinted at in the Amended Complaint but that are underdeveloped in the Plaintiffs' response brief. For the sake of completeness, the Court will address them: (3) no medical or surgical exclusion is comparable to that for wilderness programs, First Am. Compl. ¶¶ 36–41; and (4) the plan's requirements for mental-health benefits are in excess of the generally accepted standards of care, *id.* ¶¶ 78–79, 82–84.

7

First, on the 24-hour-nursing requirement, the Plaintiffs argue that there are two ways that the requirement might plausibly violate the Parity Act: because analogous medical and surgical benefits do not require 24-hour nursing, First Am. Compl. ¶¶ 58–60, 90–93; Pls.' Resp. at 9–10, and because, even if 24-hour nursing is required, only residential treatment centers require nurses to be *onsite*, First Am. Compl. ¶¶ 94–96; Pls.' Resp. at 9–10. To compare mental-health treatment with medical treatment in this context, the right comparison for residential treatment centers (the mental-health benefit at issue) is skilled nursing facilities (a medical and surgical benefit). Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 78 Fed. Reg. 68240, 68247 (Nov. 13, 2013) (codified at 26 C.F.R. pt. 54, 29 C.F.R. pt. 2590, 45 C.F.R. pts. 146, 147). The Plaintiffs' first theory thus fails because there is no disparity between the requirements: the plan requires residential treatment centers to have 24-hour nursing, and the plan incorporates state and federal law to require the same of skilled nursing facilities.[6] *See* Benefits Booklet at 62–63; Utah Admin. Code R432-150-5(2) (2018); 42 U.S.C.

---

[6]The Court recognizes that different states may have more relaxed requirements for skilled nursing facilities such that the 24-hour-nursing requirement is more restrictive in effect on mental-health benefits. But the Plaintiffs do not argue that this possibility is true or invalidates the plan's requirement, nor is it immediately apparent to the Court that the Plaintiffs could make this kind of "facial" challenge to the plan's text when it may have no effect on their claim. *See United States v. Stevens*, 559 U.S. 460, 472–73 (2010) (noting that facial challenges in constitutional contexts generally require "that no set of circumstances exists under which [the statute] would be valid" or "if a substantial number of its applications are" unlawful (cleaned up)); *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 803 (7th Cir. 2016) (highlighting that facial challenges are associated with prospective relief).

8

§ 1395i-3(b)(4)(C)(i).[7] Against this, the Plaintiffs highlight that federal law allows exceptions to the 24-hour-nursing requirement for skilled nursing facilities. First Am. Compl. ¶¶ 91–93. But the provision they cite, 42 U.S.C. § 1395i-3(b)(4)(C)(ii), permits an exception to the requirement that "a registered professional nurse [work] for more than 40 hours a week." That, however, is distinct from the requirement that a skilled nursing facility "must provide 24-hour licensed nursing service." *Id.* § 1395i-3(b)(4)(C)(i).

The Plaintiffs' alternative argument also fails. It is true that the plan requires residential treatment centers to provide "24 hour *onsite* nursing." Benefits Booklet at 62–63 (emphasis added). But besides observing that "Medicare says nothing about whether such nurses must be onsite" for the medical and surgical analogue (skilled nursing facilities), Pls.' Resp. at 10–11, the Plaintiffs do not explain why the requirement under federal law requires something else. As the Plaintiffs recognize, federal law requires skilled nursing facilities to "provide 24-hour licensed nursing service" for their "residents." 42 U.S.C. § 1395i-3(b)(4)(C)(i); *see also* 42 C.F.R. § 483.35(a)(1) (2016) (requiring facilities "on a 24-hour basis to provide nursing care to all *residents*" (emphasis added)). The Plaintiffs do not explain how that requirement could be

[7]The Plaintiffs also suggest that residential treatment centers should be compared to hospice and rehabilitation facilities. First Am. Compl. ¶¶ 35, 96; Pls.' Resp. at 4–5. But beyond saying that hospice facilities must meet requirements under state or federal law, the Plaintiffs make no developed argument about what the disparity is. *United Cent. Bank v. Davenport Est. LLC*, 815 F.3d 315, 318 (7th Cir. 2016) (undeveloped arguments deemed waived).

fulfilled with anything but onsite nursing as a factual matter, so the current complaint fails to state a claim on that basis.[8]

Second the Plaintiffs contend that, even if the requirements ultimately may be the same, they are derived from different sources and thus are disparate. Pls.' Resp. at 9. The Court recognizes that other decisions in this district have agreed with the Plaintiffs and concluded that plaintiffs plead a plausible Parity Act violation because the 24-hour-nursing requirement applies to skilled nursing facilities by operation of state and federal law yet applies to residential treatment centers directly via the plan's plain text. *See, e.g.*, *Brian W. v. Health Care Serv. Corp.*, 2025 WL 306365, at *6 (N.D. Ill. Jan. 27, 2025); *Brady K. v. Health Care Serv. Corp.*, 2025 WL 2734542, at *4 (N.D. Ill. Sep. 25, 2025). The Court respectfully disagrees. Although the requirements' *origins* differ, the Parity Act is concerned with whether the "treatment limitations" are "more *restrictive*," 29 U.S.C. § 1185a(a)(3)(A)(ii) (emphasis added), that is, whether the limitations are *actually* more restrictive for mental-health treatment. *See Midthun-Hensen ex rel. K.H. v. Grp. Health Coop. of S. Cent. Wis., Inc.*, 110 F.4th 984, 986 (7th Cir. 2024) (noting that Parity Act requires "equal footing" and prohibits the application of "more stringent[]" requirements on mental-health benefits). Whether the limitations are "as written" or "in operation," 29 C.F.R.

---

[8]The federal regulations appear to envision an exception specifically to the 24-hour requirement. *See* 42 C.F.R. § 483.35(e) (2016). But it is not clear whether this excepts only "licensed nurses" (but not "nursing service[s]" generally, thus not creating a Parity Act violation) or whether, as a factual matter, the exception applies at all. So absent discussion on this issue by the parties, the Court does not resolve it.

§ 2590.712(c)(4)(i), the upshot is that equal limitations arising from different *sources* do not create a disparity in the limitations.

Third, the Plaintiffs argue that the exclusion of wilderness programs has no comparable exclusion on the medical and surgical side. First Am. Compl. ¶¶ 36–41; Pls.' Resp. at 9. And they add that, even if there are potential analogues, then those issues cannot be considered at the pleading stage and instead must be decided "on the merits." Pls.' Resp. at 12. As a threshold matter, a motion to dismiss for failure to state a claim *is* a decision on the merits. *Berk v. Choy*, 146 S. Ct. 546, 553 (2026). More importantly, the plan excludes comparable mental-health benefits just as it does medical and surgical benefits. Wilderness programs are, according to the plan, "primarily a supportive environment," Benefits Booklet at 62; *see also Alice F. v. Health Care Serv. Corp.*, 367 F. Supp. 3d 817, 826 (N.D. Ill. 2019), and the plan similarly excludes "Custodial Care," which is "any service primarily for personal comfort for convenience," Benefits Booklet at 46, 52. At a more fundamental level, the plan excludes wilderness services on both sides because it does not list wilderness-setting services as an eligible expense on the medical and surgical side. *See generally* Benefits Booklet; Defs.' Br. at 14–15. And the proper comparison appears to be whether a certain category of treatment limitations (geography or facility type, as examples) is applied more restrictively as a general matter on mental-health benefits than their medical and surgical analogues. *Cf. Midthun-Hensen*, 110 F.4th at 988.

Finally, the Plaintiffs argue that both categories of benefits (that is, mental-health benefits and surgical and medical benefits) should be defined only according

to the generally accepted standards of care. First Am. Compl. ¶¶ 78–79, 82–84. To begin, the Court highlights that the regulations governing the Parity Act have been amended recently. *Compare* 29 C.F.R. § 2590.712 (2014), *with* 29 C.F.R. § 2590.712 (2024).[9] And although the amended regulations took effect on November 22, 2024, Requirements Related to the Mental Health Parity and Addiction Equity Act, 89 Fed. Reg. 77586, 77586 (Sep. 23, 2024) (codified at 26 C.F.R. pt. 54, 29 C.F.R. pt. 2590, 45 C.F.R. pts. 146, 147), the provisions apply only to plans that began on or after January 1, 2025 (or in other cases, later), 29 C.F.R. § 2590.712(i)(1)(i) (2024).

The different regulations shed significant light on the plausibility of the Plaintiffs' arguments. The regulations in effect at the time permitted a plan to apply "a *general standard* that any provider must meet the highest licensing requirement … to participate in the plan's provider network." 29 C.F.R. § 2590.712(c)(4)(iii) (Example 7) (emphasis added). And even if that requirement affected mental-health benefits but did not affect medical or surgical benefits (because the latter already were required by state law to meet the general standard), there was no Parity Act violation. *Id.* No matter, too, that there may be a "disparate impact on certain mental health providers." *Id.* Contrast Example 7 from the prior governing regulations with Example 5 from the present-day regulations—the latter provides that a Parity Act violation occurs where a uniform standard deviates from one category's generally

---

[9]Where the Court has cited to § 2590.712 without specifying which version, the citation has been to the one in effect from 2014 to 2024 and that governed the Plaintiffs' plan.

accepted standards of care but not the other. 29 C.F.R. § 2590.712(c)(4)(vi)(E) (2024); *see generally id.* § 2590.712 (2024) (emphasizing "greater burden[s] on access" and "outcomes" in assessing disparities). Under the then-effective regulations, an evenly applied requirement did not violate the Parity Act, even if the requirement created a disparate impact. So the Plaintiffs have not stated a plausible Parity Act violation on the basis that the 24-hour-nursing requirement for residential treatment centers might exceed licensure or care standards.

### IV. Conclusion

The Defendants' motion to dismiss, R. 31, is granted. The First Amended Complaint, R. 16, is dismissed but without prejudice for now and with leave to amend. If the Plaintiffs genuinely believe that they can fix the deficiencies identified in this Opinion, then their amended complaint is due on or before April 17, 2026.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2026